The final argument of the morning is in Appeal No. 23-2850, Charles Curry, Jr. v. Revolution Laboratories, and others. Okay, good afternoon. Ms. Gibson, whenever you're ready. Good afternoon. May it please the Court. My name is Amy Gibson, and I represent Appellants Revolution Laboratories, Barry Nussbaum and Joshua Nussbaum. This case involves claims that Revolution Laboratories sold a product called Easeltest, which was allegedly in competition with a similar product sold by Mr. Curry. Mr. Curry alleges several claims in his lawsuit, but the only claims that are relevant to this appeal are for common law trademark infringement under Illinois law and trademark infringement under Section 1125 of the Land-A-Max. This case is on appeal after a jury verdict in favor of Mr. Curry awarding Mr. Curry $2,500 in actual damages to his reputation and goodwill, approximately $500,000 in a disgorgement award of the defendant's profits pursuant to the Land-A-Max, and $900,000 in punitive damages. After trial, the District Court concluded that the jury's verdict on disgorgement was advisory because, as Mr. Curry argued, that was an equitable remedy that could not be awarded by the jury but had to be awarded by the judge. The judge then increased the disgorgement award to approximately $550,000. The only issue on this appeal is whether the $900,000 jury verdict on punitive damages was proper. It was not. There are two basis for this appeal. The first basis is that the $900,000 punitive damages award was excessive and unconstitutional, particularly in light of the fact that the jury only awarded Mr. Curry $2,500 in actual damages to his reputation and goodwill. Why does the Constitution require ignoring the disgorgement? The disgorgement award should not be included within the punitive damages to compensatory damages ratio because the disgorgement award was entered pursuant to the Land-A-Max. The Land-A-Max says that an award of disgorged profits cannot be treated as a penalty. In this case, it is not being treated as a penalty. It is just part of the overall mix of relief being provided to the plaintiff. That is correct. It is, in essence, money obtained by violating the plaintiff's rights. That is correct. What is it about the Constitution that requires taking that into account as we evaluate the punitive damage award? As part of the Gore analysis under the three guideposts, the second Gore guidepost discusses the ratio of punitive damages to actual damages. Why is it not disgorgement? Do you think that itself distinguishes between disgorgement of profits and actual damages? Gore does not discuss that issue, but there is a case that does discuss the issue, which is Adidas, which was cited in our brief. That is the District Court of where? Oregon, I believe. Why should we draw that line? There is a line because a disgorgement award by a plaintiff for harm to themselves. It is meant to disgorge profits from a defendant who perhaps violated the plaintiff's rights. Plaintiff's rights. Correct. And it is paid to the plaintiff, correct? It is paid to the plaintiff, but it is an equitable remedy. It is not considered actual damages, which is evidenced by the plain text of the Lanham Act, which describes the two types of remedies differently. I am trying to understand how that line gets teased out from the prohibition of the Fifth Amendment and 14th Amendment on being deprived of property without due process of law. I am not sure that I understand the question, Judge. Well, I do not understand the point that tries to draw a constitutional line that you are trying to draw between the compensatory damages of $2,500 and the disgorgement of $550,000 wrongfully obtained by the defendant's misconduct. The line we are trying to draw is that the damages of $2,500 and $550,000 are not considered in the punitive damages to actual damages ratio. I understand. Okay. Sorry. Go to the because. I am sorry I interrupted you. Yes. Because by doing that, it double counts a damage award that has a deterrent effect. So a disgorgement award on the one hand is meant to deter. Similarly, a punitive damages award also is meant to deter. And because you have two types of damages that serve a similar purpose, when you have them on both sides of the equation, you have the punitive damages in the numerator and you have the disgorgement award plus actual damages in the denominator. I understand. But the disgorgement of profits basically says we are going to put you back in the position you would have been if you had not violated the plaintiff's rights. Correct? Correct. And so you are no worse off, no better off, no worse off than if you had not violated the rights, right? Correct. But punitive damages are intended to do something quite different. Put you in a worse position because you violated the rights, right? Well, one of the reasons for punitive damages, yes, is a penalty. Yeah. To deter. To deter. Okay. By not only denying benefit, but also imposing an affirmative penalty, right? That's correct. That's one of the purposes. Can I ask you, the reason, if I understand the law here correctly, the reason punitive damages were not available under the Federal Trademark Act here is because this was not yet registered by plaintiff, correct? That's correct. Do you think Congress could constitutionally amend the Federal Trademark Act to remove that requirement for punitive damages and allow them for unregistered? Perhaps Congress could amend the statute. Without violating the Due Process Clause? I would argue that, I think it would be a fact-specific situation, but I do think that, well, certainly if Congress wanted to allow punitive damages as an element of damages for a violation of this section of the Lanham Act, it could certainly do that, but that's not the state of the law that we have. No, but you're making a constitutional argument here, and that's why I'm asking about what the Constitution might allow. Can I ask also about the relevant arithmetic here? As I understand this, the three defendants were held jointly and severally liable for the disgorgement of profits and actual damages, is that right? Correct. And there wasn't 900,000 awarded against any one of them in punitive damages, it was 300,000 each, right? Correct. So why should we look at 900,000 rather than 300,000 for the calculation, particularly since this is always an individual calculation? The appropriate number here is $900,000 because there wasn't any distinct conduct by any one defendant. But the jury instructions, the jury instructions instructed the jury that when awarding punitive damages, they had to focus on the particular defendant, right? Correct. And so, and the jury presumably abided by those instructions and looked at each defendant individually and then decided to award $300,000 for each defendant. So I don't understand how, I guess I feel to kind of appreciate the basis of your argument that the conduct was all kind of mixed together because the jury was told they couldn't do that when considering punitive damages. I think the difference here is that we had a very closely held business with two individuals that were the owner-operators or representatives of the company. So it's not as if we had different plaintiffs and different defendants with different levels of culpability or liability, like some of the cases that Mr. Curry cited in his brief. Here we have basically the same conduct by all three parties. So I don't think it's appropriate to separate out the different awards. It's more appropriate to view them collectively. But I guess my point is that's what the jury did, right? If we assume that the jury followed the instructions, which we have to assume, absent any contrary evidence, the jury was told you can't consider it all jumbled up. You have to look at what each person did individually, and when the jury did that, it assigned punitive damage to each individual person. Let me ask you this. If they had assigned $300,000 to one, $200,000 to the other, and $100,000 to the other, do you think that we need to aggregate all of them and look at it as $600,000? I think that would be a different analysis, and that would be supported by some of the cases that Mr. Curry cited where you had different levels of culpability and different amounts of judgment that was entered against the defendant because their conduct was not equal, and it didn't result in an equal punitive damage. But then you're just asking us to reweigh the evidence that the jury considered, right? We're not asking the court to reweigh the evidence. We're asking the court to decide an issue of law, which is whether or not the award should be viewed on a per-defendant basis as opposed to collectively. Irrespective of how we look at that piece of the case, even if we look at it on a per-defendant basis, we're left with a ratio of 120 to 1, which is still excessive. If I could just ask one more argument. Your argument about the discouragement versus actual damages, I think it might have some persuasive value if they're completely distinct claims. In other words, if the actions that gave rise to those damages were completely different. But here, the actions that gave rise to the violation of the common law trademark infringement were precisely the same actions that gave rise to the violation of the Lanham Act, right? In our prior case, Sacramento v. U.S. Bank National Association, we said that that's the operative test, looking at whether or not the underlying conduct was the same, regardless of how the plaintiff may have split out the counts or split out the claims. How do you address that line of reasoning in Sacramento? Sure. You're correct that the conduct is the same. Trademark infringement under the common law is similar to trademark infringement under the Lanham Act. But where I think there's the difference is in the available remedies under the Lanham Act. So if the discouragement of profits is common law, under Illinois common law, it allowed discouragement of profits, and the jury awarded the $500,000 or the judge did under Illinois state law, you would still argue that we need to look at the compensatory damages and not the whole award? The analysis might be different, and I think the reasoning is because there's a clear purpose and intent in the Lanham Act that a disgorgement award cannot be viewed as penal in nature. But doesn't that ñ and you talked about that, about how if the damages and the punitive damages have some overlap, that's not allowed. But Campbell, the Supreme Court addressed that in Campbell, right? In Campbell, the Supreme Court looked at award for pain and suffering, and then I think it was Justice Kennedy said that punitive damage is also supposed to address pain and suffering, and so we'll consider that when we consider the ratios. But the court at that time didn't say that just as a matter of kind of a priori, that that means that we can't even consider that portion of the awarded damages in the computation. And again, I think the difference is that Campbell did not involve a similar claim under the Lanham Act. That's really the differentiating factor here, is that by virtue of including the disgorgement award in the ratio of punitive damages to actual damages, it really converted something that could be viewed as compensatory in nature to penal in nature, because it's counted on both sides. And just to further elaborate on a related point, the appeal doesn't rise and fall just on the ratio. The other GOPCOR guideposts are also important and we believe support the basis for the appeal. We have the reprehensibility factors, which I know I'm out on time, but I would appreciate the opportunity for a rebuttal if that's available. Okay. We'll give you a minute on rebuttal and we'll hear from Mr. Cain. Thank you. You're welcome. Good afternoon, Your Honors, and may I please record Jeff Cain for the plaintiff. Just to pick up on the two issues that you were discussing with defendants counsel. On infringing profits, one point we didn't get to. I do think it's important to realize a defendant who earns a profit from her tort naturally requires a greater amount of punitive damages for punishments and deterrence than does a defendant who does not earn any profit on her tort. Here the defendants earned $547,000 of infringing profits from their infringements. It's only natural that when the district court says, is the punitive damages award grossly excessive, it's going to consider the fact that the defendants earned that money on their profits. I would also point out that in an infringement case, lost sales are extremely difficult to prove. And so it's not at all unusual for plaintiffs to do what this plaintiff did, which is not to seek lost sales as a category of damages, but instead to seek the infringing profits of the defendants. And that's what Mr. Curry did. The actual damages in this case are only loss of goodwill and loss of reputation. They're not lost sales. What this court said in Epic Systems is when you're looking at punitive damages, you might have a situation where the compensatory damages awarded by the jury might not capture the entire amount of harm that the plaintiff suffered. And I think that's particularly true here because the plaintiff didn't explicitly seek lost sales. It's easy to think, and I think it's quite correct to think, that at least some, if not all, of that $547,000 in infringing profits represents displaced sales to Mr. Curry. In other words, Mr. Curry would have had some, if not all, of those sales himself had it not been for the defendant's infringement. So I understand correctly. You're saying Mr. Curry chose not to seek to prove lost sales but opted for the discouragement of profits? That's correct, Your Honor. And that's fairly common in infringement cases simply because it's difficult to prove lost sales. The other issue the court was discussing with defendants' counsel is whether the numerator and the ratio should be 900,000 or 300,000. And just a couple points on this. One, I think the court alluded to, the defendants don't have a collective due process right. Each individual defendant has an individual due process right. And as the court pointed out, this is several liability. In other words, if Barry Nussbaum, one of the individual defendants, pays his $300,000, even if neither Joshua Nussbaum nor Revolution Laboratories pays their $300,000, Barry Nussbaum is only liable for the $300,000. The reason I bring this up is defendants took the position at trial and have taken the position after trial that Revolution Laboratories has been drained of assets and cannot pay any judgment. So it would be unfair if the defendants were allowed to, if you will, get credit for the $300,000 punitive damages against Revolution when they've said that Mr. Curry is unlikely to actually collect that amount. No, 549 was imposed, the denominator part of this, jointly and separately, right? They're all on the hook for that. That's correct, Your Honor. So your point is that if we're talking about a due process right that is an individual right, so you've got to look at them individually, you take $300,000 over that which each individual is responsible for. Correct, Your Honor. So that's how you get your math. $300,000 over what, 549 or something, 550? Yes, Your Honor. It would be $300,000 over the 550 plus defendants have conceded once you're including infringing profits in the denominator, you should also include the pre-judgment interest on those infringing profits. So that adds another $200,000 or something. It's $201,000, yes. I would also point out we argued both in the district court and in this court that the court should include costs in the denominator as well, costs that Mr. Curry incurred in bringing his lawsuit. Defendants did not respond to that argument in the district court. They also have not responded to it here in this court, so it is forfeited. Mr. Cain, I just have one brief question on an issue where it's in the appeal but it's not being argued, at least in the courtroom, and that's the stipulation that was entered into, the stipulation of liability. The part of that position that the stipulation of liability is one that came from Revolution and the two individual defendants, right? All three of them together stipulated to liability. All three defendants stipulated that Revolution had committed trademark infringement. In other words, they did not stipulate that the two individual defendants had committed trademark infringement. Okay, so it was going to be as to Revolution at trial was going to be a damages trial, and as to the individuals, it was going to be a liability and damages trial? Yes, as to the individuals, the trial was about individual liability, so the trademark infringement was established. Whether the individuals were liable for that trademark infringement was at issue in trial. Okay, is there anything that prevented Revolution from writing down in that stipulation that punitive damages shall not be available at the upcoming trial? Absolutely not, Your Honor. They absolutely could have put that into the stipulation, and they didn't. And we know, at least I read from the record, that there was a lot of tangling going on in the litigation about discovery that was bearing upon punitive damages. In fact, there was, at one point in time, I think there might have been a sanctions order about trust assets or family wealth or something. That's absolutely correct, Your Honor. The defendants were sanctioned twice and their counsel was sanctioned once. This was a year-long discovery fight over discovery into the defendant's personal net worth. The entire basis for that discovery was that it was relevant to punitive damages under the common law infringement claim. We stated that in writing and on the record. Defendants stated that in writing and on the record, and the district court stated that in writing and on the record. At no point in that process did defendants say, wait a minute, we didn't know there were punitive damages available here. I think that indicates that defendants were not, as they claim, shocked to discover when they got our proposed jury instructions that we were seeking punitive damages. Mr. Cain, let me throw a hypothetical at you. Where I'm coming from is how we deal with multiple defendant cases where punitive damages come into play. That could be, for example, in police misconduct or public employment, 1983 cases and the like, at least in cases egregious enough to justify punitive damages. Let's suppose a jury finds a plaintiff injured by a group of police officers should be awarded compensatory damages of $100,000. There are 20 defendants, and the jury awards $100,000 in punitive damages against each one of them. How should we think about that? We've got $2 million in total punitive damages, maybe collectible, maybe not, $100,000 in compensatories. I'm not sure how to even get my head around that under the Supreme Court's jurisprudence, but it's not, to me, an inconceivable type of problem for us. Maybe there would be instances where some different differentiation between the plaintiffs would be appropriate. Here there's only one plaintiff, and there are three defendants. I think in the hypo you posed, you still would treat... I have one plaintiff, 20 defendants. Yeah, I think in the hypo you posed, you would still treat each defendant individually because each defendant only has their own individual due process rights. You could have a situation where there are multiple plaintiffs where you would assess each individual plaintiff, and that's something that courts have actually done where they've said, okay, this defendant was liable for this much against this plaintiff, so with respect to that plaintiff, the ratio is 4 to 1. Then with respect to this plaintiff, they're liable for this much, so with respect to that plaintiff, the ratio is 5 to 1, etc. Courts have found ways of getting around this. I would just point out the defendant's argument that the numerator should be 900,000 instead of 300,000 is very much forfeited. We said in our opposition brief in the district court that the proper numerator was 300,000 instead of 900,000. Defendants did not respond to that argument in their reply brief. When the district court decided this issue, the district court said, I'm using 300,000 as the numerator because defendants have forfeited that issue. This is not an instance where the defendants are appealing, you might say, the legal basis on which the district court ruled because the district court didn't give a legal basis. It relied simply on forfeiture. I don't think it would set a good precedent if defendants were allowed to address this argument now on appeal when they failed to do so initially. If the court has no further questions, I will sit down. Okay. Mr. Cain, thank you. Ms. Gibson, we'll give you that minute. Thank you. I'd like to just address one issue relating to the stipulation. Judge Scudder, you had asked counsel, was there anything preventing the defendants from expressly writing in the stipulation that there was no stipulation as to punitive damages? And I agree with counsel's response. There was nothing preventing the defendants from expressly stating that, but it wasn't necessary because based on the plain language of the stipulation, it read that the revolution was stipulating to liability, quote, under count five, end quote. Nowhere in count five did Mr. Curry seek any damages. He only sought injunctive relief. And so by denying the defendant's motion to strike on the trademark infringement claim, the court in effect gave Mr. Curry leave to amend his claim after the defendants had already stipulated on the claim for infringement only, after they had already stopped selling the product years before, and after they had already agreed to become party to a preliminary injunction. But didn't, in paragraph four, there's that last provision, right? Noting that it is disputed as to the amount of damages as to all counts. Yes, and we believe the interpretation of that statement is that it's as to all counts that sought damages. So if there wasn't... What are your thoughts on the Rule 54 problem? The judge's job is to... The court's job is to award whatever relief is appropriate, whether it's been requested or not. Yes, we recognize that an amendment may be permitted at any time as long as it does not prejudice the defendants, and the district court did not consider the prejudice that was raised by defendants in its ruling. It passed over that issue and instead denied the motion to strike the jury trial. Ms. Gibson, thanks to you. Thank you. And thanks to you and your colleague. We'll take the appeal under advisement. Thank you. And the court is adjourned. Thank you.